Pleased to hear from appellant when you're ready. Good morning, Your Honors. Joseph Troiano on behalf of the appellant. I'd like to reserve three minutes for rebuttal. In determining the validity of a liability waiver under the facts of this case, the issue is whether Nevada or Florida law applies. More specifically, does Nevada and the renowned analysis that's cited in my brief apply, which appellants did not apply or do not address at all, apply, or does Florida law and the litany of cases that appellees raised in their answering a brief apply? And then the second question, if Florida law applies, how do we get there? I'm having a number of people. If you turn away from the microphone, I won't hear you. Okay, so you got to either speak up or I'll speak up. I apologize. Okay, so the second issue is simply put, which state law applies Nevada or Florida and the Florida law applies. How do we get there? So, I mean, why doesn't Florida law apply? What Nevada authority would you point this to to essentially say this violates Nevada public policy or is unenforceable for some other reason? A few arguments as to why Florida law doesn't apply. First is that at the district court level, appellees never argue that the choice of law provision should be enforced. They did not argue that the choice of law provision covers the tort claim, which is what Costello's claim is the negligence claim. The other thing they didn't argue, and I thought that's everybody's arguing that that's what this is about, right? Is to if this if this waiver applies at this form that she signed governs, then on his face, it would govern the negligence claim. It would not govern the gross negligence claim. That's a separate issue. Correct, correct. Our position is at the district court level. They did not set forth that argument that the district court should enforce the choice of law provision to cover the tort claim. Are you saying the district court just to respond, they sort of decided that that it was. Well, if you want my position, if you look at the order, I don't think it's very clear. The district court did not apply for the negligence law. My other point, I'm sorry, it didn't apply for the negligence law because it's because it decided that the way that negligence was not an issue because of the waiver. And that because of the waiver and the contractual commitment in the waiver that there was no negligence case possible and only a gross negligence case. So it never applied Florida negligence law. Why would it? Yes. Well, the answer to that question, Your Honor, is if you notice in their answering brief, they set forth the case of a series of Florida cases that stand for the proposition that my client assumed the risk of her injury based upon the very language in the contract. That argument was never raised in the district court level. The last argument as to why Florida law would not apply is that NASCAR, who is incorporated in Florida, is not a party to this case. Why are they not a party to this case? I didn't sue NASCAR. We sue the racing company and the particular employee involved in the incident. We did not sue NASCAR. It was a couple years ago that we filed the lawsuit. I'd like to think that I filed it to avoid this issue. But the point is, is that NASCAR is not a party to this case. Without question, if NASCAR was a party to this case, I think the argument for them for NASCAR is simple. Regardless, or even if you were to apply a secondary statement, a conflict of law, which Nevada does, the most significant relationship test, the evidence that they would present as to why Florida law would apply is the contract itself. This is a personal injury matter that arises out of an incident at the Las Vegas Motor Speedway in Nevada. Costello, my client, is a Nevada citizen. It involves Traffic Alexander, who is a North Carolina citizen, and Glenwood Company, who is a Virginia resident. What in Nevada law tells us that this waiver and the choice of law provision is unenforceable? That's what I'm looking for, is some authority or some decisional law from Nevada that would say, here in Nevada, we don't abide by this if there's a tort that occurred in Nevada. Well, I think there's two separate issues. The argument that the waiver wouldn't apply would be the Renan decision. And that's our argument. If you apply that analysis, that this waiver is not valid. Your second question as to the choice of law. Again, I just go back to the General Motors case, Nevada Supreme Court, that talks about Nevada applying the most significant relationship test. Just give me one moment. Okay. The question is not what is the most significant relationship to deciding what Nevada tort laws should apply. The question is, what law tells you that this waiver can be enforced or not enforced? You say NASCAR is a stranger to this. And therefore, there's a policy somewhere that you cannot enforce the waiver because NASCAR is the one. She signed the waiver with NASCAR. And you say NASCAR is a stranger to this. Correct. Yes, they're not a party to this action. They're not a party to this action. But are they a stranger to the transaction that's involved? Well, I think NASCAR, if they were a party to the action, they would cite to the General Motors case. Let me just read what it says. And cite into Section 146 of Restatement Second Conflicts of Law of the Nevada Supreme Court and General Motors States. The general rule in Section 146 requires the court to apply the law of the state where the injury took place. We conclude that in order for the analysis to move past this general rule and into Section 6 principles, a party must present some evidence of a relationship between the non-formed state, the occurrence giving rise of the claims of relief, and the parties. Is that from the contract section of the restatement? This is from Section 146 of Restatement Second Conflicts of Law. Is there in that General Motors case, or is the restatement that I think the General Motors case is talking about, are they talking about a case that involves a written waiver? Or are they just talking about, you know, if I'm a judge and I'm trying to figure out, you know, should I be applying Nevada law if there hadn't been a waiver? You're correct. No, that case does not apply to a liability waiver. So that's the harder, I mean, that's that's some ways like we have to get through the liability waiver before we'd even get to that. So what is your best argument that that when you have a waiver and the waiver says it's going to be, you know, you basically agree that we're going to do this under some other state's law that that I think this is what Judge Bress has been asking you. How is that violate some written public policy of Nevada? It's like, where do we see that that's a problem under Nevada law? If you have a waiver that if you have a waiver says I will, I won't sue you and this will be construed under Florida's law. I don't think so. Yeah, well, I understand that. But I want to answer your question. But to get there, you have to get through a few steps that were never even argued by the appellees at the district court level. They didn't argue that there were 10 third party beneficiaries of the contract. They were given a reprieve and provided a supplemental brief. That's ultimately what the court found. But they never argued that it was enforceable under Nevada law. They never argued that the governed by language in the choice of law provision actually applies to the tort claim. What is your argument that it's unenforceable? Right. That's what I'm she made a contract with NASCAR, which is based in Florida. Right. And so that seems like a substantial enough relationship. Why is that wrong? Well, it's unenforceable because NASCAR is not a party to this case. But the NASCAR waiver is broader than just NASCAR. It includes other people like like the pit crew, too. Right. My position, if you apply the General Motors case and walk through the analysis. OK, you keep trying. You keep talking about tort law and the restatement of conflicts of laws. But you're not talking about the contract part of tort law of the restatement. The contract part restatement basically says you can contract about any any about to have any. This is one section one six eighty seven. You can have any state's law control unless they have no substantial relationship to the transaction or unless they have no substantial relationship to the parties or the transaction. And there is no reasonable basis for the party's choice. Well, they have the chosen state has a substantial relationship to the parties. There's a contract. NASA is running this thing. It has race car owners and employees and all this stuff in this race. And they all want to be exempt from coverage from from negligence because this is a dangerous thing. Person chooses a ticket to be in a dangerous area and they want some protection. And so it sounds like there's a relationship between NASCAR, which provided the waiver, which your client signed and this whole race situation. So if I'm wrong and there's no substantial relationship of this contract to Florida, then tell me how. Well, again, my position is simply NASCAR is not a party to this case. NASCAR was a party to this case. They would be afforded the protections under the conflicts of law. I think we have your argument at this point. Let me ask you about the gross negligence claim, because that is not covered by the waiver. So what is your what is your argument as to why there's a disputed material fact on on the gross negligence aspect of this? The argument is at the district court level, he focused on the fact that Mr. Alexander had seen my client from approximately 30 feet away after he was 30 feet away from my client. He pulled the nine hundred pound cards, not thirteen hundred pounds. They're correct. Within 18 inches of my client. And that's after he brushed that card against my client's brother, who is an actor. We believe that that is sufficient evidence to present a gross negligence claim that a jury should be able to. What is this card used for? My understanding. The reason why I was wrong on the thirteen hundred pounds versus nine hundred is it carries water, I believe. And I believe that they use it during the race for he mentioned in his deposition. But it's something that's used during the race. And that's one of the tasks of Mr. Alexander. What are your claimed compensatory damages? Not not any kind of example or punitive damages. What do you claim as compensatory damages, past pain and suffering, future pain and suffering, medical expenses? Have you put forward in at least in front of district court what that number would be? No, no, we did not. I mean, we discussed the nature and the extent of the injuries, because we think that applied to the analysis of whether or not the liability waiver is valid. In short, my client was knocked to the ground, fractured her elbow, sustained a neck injury that required her to undergo surgery. But no, we didn't put forth those specific numbers. Those have been disclosed. But no, that wasn't a part of the district court. Is your is your position on this gross negligence that you that you would have? I mean, I assume you agree the cart was going really slow and super heavy and being pulled by a person. Right. It's going it's going really slow. So is your your position that that in order to not be grossly negligent, the car could never touch anybody? Is that I mean, I'm trying to figure out because I get your point. I see somebody from 30 feet away, but as slow as this car was going, that that's like a mile away for a car or something that's really far away. So it's hard for me to see if I see somebody 30 feet away and I'm pulling this car along at the mile an hour or whatever speed it just could. It probably means very little to me that they're 30 feet away because they're so far away at that speed. Yeah, I guess my point regarding the 30 feet away is one he recognized there. I would have equated to you see somebody on the side of the road fixing a tire. You know, you should probably be cautious and avoid that person. But I think you're right. I think he was going at a walking pace. That's what the district court found, too. So you don't you don't just to be clear, you don't dispute. No, I don't. I don't. I don't. But the time speed distance, if you were just to do 30 feet, you're talking about least in 15 seconds or something. Well, I think it's yeah. Well, I hope it was. No, it's I think it's about five. It's about five seconds to cover 30 feet. So the question is, well, he's pulling around pulling a car that's over 900 pounds. Where's the evidence? I mean, the standard is right. I'm looking at a failure to exercise even a slight degree of care. What facts would you point to that would show that? Or essentially that just prior to knocking my client to the ground, he brushed out 900 pound cart against her. My her brother's knee while he's standing right next to her. In other words, he's I would argue he's barreling through that area, making contact with people. The second point is, according to his deposition testimony, he gave himself about 18 inches to pass my client because he had testified that when he recalls that she jumped and spin towards him. Doesn't make sense to me, but that's his testimony. But again, you're saying he should have given given her 18 inches, but he didn't make sure I understand what you mean. No, I think he was acting grossly negligent by pulling a 900 pound car past somebody. He only gave himself, according to his own testimony, 18 inches to clear. It's a fire lane. How big is it? I'm sorry. How big is this fire lane? Water in a fire lane. Well, there's there's a picture in my brief. OK, that may give you some insight of that. I don't know. I don't want the actual measurements, not in the record. It's not. It's not. I don't want to say that it is. So I think we'll give you some time for rebuttal since we've kept you on the run. We'll put two minutes on the clock when you come back. Let's hear from Mr. Lund. Hello, may it please the court. My name is Christopher Lund. I represent the appellees Glenwood Company and Travis Alexander. It's our position that the district court properly granted summary judgment to my clients on the negligence and gross negligence claims, starting with the negligence claims. It was governed by Florida law based on the waiver agreement, the hot pass or pit pass, as it's called. Can I get you to address? He mentioned that he's saying he didn't make certain arguments to the district court. The district court, I think, on page two of its order, you know, says that, you know, cites Florida law and then says Florida law applies to the waiver and cites the Florida law and cites the contract. The language on the back of the pass and then says Florida law governs doesn't get to the negligence issue, obviously. But it seems odd to me that that you that that wouldn't have been something that was said to the to the district court. But I guess his position is that you never argued the Florida law applied to the waiver issue. I think opposing counsel is simply wrong. Look, reading the briefs, looking at my motion for summary judgment, I state right there the provision of the agreement that says Florida law applies. I then cite a Florida statute that shows that these exact type of race waivers are valid. And then I go into why under Nevada or Florida law, the waiver is valid. I have it under under why under Nevada law, a Nevada court would. Would enforce the waiver and not find it unenforceable in the context of this case, opposing counsel decided the General Motors case multiple times. That is not applicable to this case because the General Motors case did not involve one contracts. It was simply what do you do when there is no contract that does a choice of law? You read the General Motors opinion. Nowhere in it does it even mention the word contract. The proper case law in Nevada, you can find one example is the Soro case. First Federal Credit Union versus Soro. It's a 2015 case that I cite in my my brief on page 14. In that case, there there was an issue with it. There was a bank and there was a note and then there was a some tort claims based on it. The note itself said Utah law will apply to. To as to the validity of the agreement, there was some language in there didn't mention towards. The Soro court, the Nevada Supreme Court looked at that and said. We first look to the language of the contract to determine if there's a choice of law. And that that governs not only the contract and towards, if not, then we do a different analysis. That's exactly what's what should be done here. The Soro court also cited to Tuxedo International versus Rosenberg. It's a 2011 Nevada Supreme Court case. Again, Soro mentions that. I didn't put specifically Tuxedo in my brief, but it's mentioned in the Soro case. In that case, it involved the Nevada Supreme Court was looking at a couple of contracts with a contract with an addendum that talked about that said. Peru is the choice of law and a choice of forum issue that said Peru would would be a choice forum that can be used. The Nevada Supreme Court looked at that, said this is a case of first impression because there are some tort claims related to the contract. But the contract language didn't explicitly say. The didn't the tort claims didn't explicitly deal with the contract. So they said if a tort claim is tangentially related to contract, does the for a choice of forum clause prevent us from your friend? Seems to be saying, look, if NASCAR were in this case, this would be a great argument. But I did not sue NASCAR. So this waiver shouldn't apply. How do you respond to that? My clients are third party beneficiaries of this contract. They're explicitly named in the agreement as a beneficiary. The the the hot pass agreement says these are releases and it names pit crew members, car owners, others in the restricted area. My clients fall into all of those. So. As third party beneficiaries, they fall under the terms of the agreement and the agreement says that Florida law applies and the agreement itself. It also says the signer, meaning the plaintiff, expressly agrees that this kind of this contract will be interpreted as if it was actually done, if it was executed within Nevada or sorry, Florida, meaning we have to treat as if, in other words, the event was in Florida. And when she get there, it's clear that Florida law applies. Let's let's talk about the gross negligence piece of this. So why why was there not a disputed material fact on gross negligence? Looking at the facts of the case. The NSP is fact you don't get to gross negligence, as you mentioned before, the definition under Nevada law for gross negligence is it's materially more want of care than constitutes simple inadvertence. They also say it's substantially and appreciably higher in magnitude and more culpable than ordinary negligence. And then they say gross negligence is equivalent to the failure to exercise even a slight degree of care in this in this hot pass. Is there like a line that they're supposed to sit behind? How does this work where you buy this ticket? You get special access to this part of the behind the scenes of the race. And then are you kept in a certain area that you can be in a certain area? There was a big sorry, they call the pit road along the fire lane. And so, yes, the if you have this pad is pass, it's a restricted area and you can sit there and observe at the race at a closer. You got standing or sitting or standing or sitting. There is a photo in a plaintiff's brief, I think, on page seven or eight, where it shows there are people sitting and standing, watching. And interesting, you'll see the the brother of the plaintiff sitting and his chair is over the yellow line into the fire lane, as is everyone else standing and sitting. Not one is off the fire lane. That's what I was kind of asking about. Are you supposed to not be on the other side of the yellow line? You're. The the it's not it's not in the record, but generally you're you're supposed to try and stay back as much as you can and so that the pit crews can come through and work as they need to. And so in this case, when we're talking about gross negligence, the undisputed facts are Mr. Alexander was pulling this cart at walking speed and he's pulling it, not pushing it. He's pulling it. It's like the little red rider, but it's bigger. It's used to put water back into an engine and cool it quickly, among other things. He testified he'd been doing this for 18 years, never had an incident. He walks through. He observes people. Other pit crew tries to avoid them as he's going through. The plaintiff herself testified in her deposition that she believes he he inadvertently swerved slightly over the yellow line and struck her right there. So, in all in all his walking through, he he didn't strike other people like like bowling pins. He avoided them. He inadvertently veered over the yellow line, according to the plaintiff and struck her under those facts you you don't get above negligence. You don't get to gross negligence because under the law in Nevada, it has to be substantially substantially and appreciably higher degree of magnitude than simple negligence. What is the slight care he exercised? He was walking slowly and he was he managed to get through this whole area. He'd been doing it for 18 years and for the first time had an incident with someone. Well, I think that however much care he exercised on other days may not factor into how much care he was exercising on this particular day. I appreciate that. So the slight care is he was walking slowly. He was walking slowly. As the district court said, he wasn't he wasn't trying to surf on this this pit cart. He didn't jump up and and, you know, just didn't care who he hit. He wasn't running through. Was it even possible, though, to move this thing quickly? It seems heavy. It had wheels so you could theoretically get it moving and then jump on or you could directly pull quickly if you wanted to, because of the way the system works. So he's pulling it through. Now it seems it's possible that people are supposed to stay out of a fire lane, but they might wander in. So he has some way of looking out for people. Is he in front of the cart or? He's directly in front. So so he can see everyone in front of him. Is it motorized in any way or just human power? I do not believe it's motorized. I think it's human power. There's a there's like a bar. He holds it with the handles and he walks and then the carts on at least for four wheels. You know, the Nevada courts were kind of confusing me on this issue because they say there's hardly any case where it's not a factual situation. So I was wondering if you know of anything where there was a dispute as to whether this is gross negligence or not. And as a matter of law in Nevada, it was decided it was not gross negligence. Off the top of my head, I'm not familiar with cases with that exact scenario. What I do know, which I cited in the brief, were the cases where they said if the facts are in dispute and no reasonable jury could find that rose to above the level of negligence, then the court can make a decision as a matter of law that it did not rise to the level of gross negligence. I wanted to also bring up the issue of the plaintiff's counsel said that the court just on its own decided that Florida law applies. If you look at the record, the transcript of oral arguments, the district court repeatedly said that he found that Florida law applies. He mentions the waiver, the language, and then applies Florida law properly. So the idea that the court just on his own came up with that, it just isn't there in the record. And I also want to point out that even if I'm not sure that's even relevant, because I think if the district court had come up with something, that's still before us. In theory, the district court could have found somebody who waived it, but if the district court doesn't and then the district court decides an issue, I think it's before us. Yes, and rule 56. Even assuming you hadn't brought it up and the district court just decided on its own that it was Florida law, that's what's before us because that's what the district court judge decided, I think. I agree, yes. And rule 56 allows the district court to do that as well. Look at the record material that wasn't presented in summary judgment and still make the decision. So that is still before you. The idea that the plaintiff did not knowingly waive her rights, I believe our brief shows that she knowingly waived her rights under the agreement. The hot pass states that if she is observing the events, if she's in a restricted area, that it is very dangerous and injury may occur. And she signed says, yes, I understand that. I waive all liability for it, even the negligence. Remind me, did she actually do we have evidence that she actually personally signed because I didn't, you know, I'm used to like, you know, you show up and your friend passes out the tickets that they bought for everybody and maybe it has language on the back, but you didn't buy. She did sign it. She signed it electronically. She was given 10 days to review the agreement. Then she signed it and return it to NASCAR, and then she was allowed to enter. So the idea that she signed a hot pass other other also called a pit pass to be in the pit road next to the pit crew. And then she's injured by a pit crew member unintentionally. The idea that the that she did not understand that that was part of what she agreed to just defies logic from the record. I'm looking at this picture. That's the brother sitting down. Yes. And then we got all kinds of people who are over the yellow line standing in the fire lane. Yes. And so my my client, Mr. Alexander, would had to weave around these people to to get the cart to where he needed it to be. What else is this? What is this lane used for? Otherwise, I mean, what else goes through their cars? Yes. Other equipment, cars, sometimes before the race or if there is a fire, it is really the fire lane. So fire trucks would come through. I think we have your argument, sir, unless there are no further questions, I want to thank you for your presentation this morning. Thank you. And we'll hear from Mr. Trayana. Just a couple of points. What went on in the fire lane and what kind of vehicles went through that under Nevada law doesn't matter because if you were to apply the decision, it's her understanding at the time she signed the release. Simply put, in this case, if Florida law applies or negligible law applies, her claims get dismissed. If Nevada law applies, it doesn't. It doesn't because of the decision. It doesn't because she did. They haven't established she had an understanding of the risk that she assumed, which is standing in that area and getting knocked to the ground. Well, that goes to Nevada's interpretation of these waiver agreements, not Florida law on waiver agreements. Correct. And my argument is that you want Nevada law to govern the waiver agreement. Correct. I want the analysis to be under Nevada law. Is this a valid liability waiver? Because if you apply Nevada law, I'm right. If you apply Florida law, they're right. And just to the point of one more point in their answering brief is that page 19. It says last paragraph. However, Florida courts have long held that the exact language or similar language used in the waiver agreement for racing events is sufficient to apprise the signer of potential risk. Those cases, that's what I'm talking about. These are the cases that were not cited in the brief. They're nowhere in the district court record. They weren't argued at the hearing. They're not in the order. And so my argument is simple. Nevada law applies. We're not decision applies. You follow that analysis. It's not a valid liability waiver. Their argument is you follow these cases that we cited for the first time in our answering brief. And this language is sufficient to apprise of the risk. Thank you for your time. Well, thank you for your time and thank you for your argument. Thank you both counsel for the briefing and arguments. The matter is submitted. The court will stand in recess for five minutes. Thank you.
judges: BRESS, VANDYKE, Restani